UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Grupo Posadas S.A.B. de C.V., *et al.*,[1] | Case No.: 21-11831 (SHL) |
| Debtors. | Jointly Administered |

---

**DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN**

---

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Richard J. Cooper
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors and Debtors-in-Possession*

Dated: November 30, 2021

---

[1]        The Debtors, together with each of the Debtor's tax identification number, as applicable, are:  Grupo Posadas S.A.B. de C.V. (GPO920120440), and Operadora del Golfo de Mexico, S.A. de C.V. (OGM8712127Z2).  The location of the corporate headquarters and the service address for Grupo Posadas S.A.B. de C.V. is: Prolongación Paseo de la Reforma No. 1015 Torre A, Piso 9 Colonia Santa Fe, Alcaldía Cuajimalpa de Morelos, C.P. 05348, Mexico City, Mexico.

TABLE OF CONTENTS

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
    GOVERNING LAW AND OTHER REFERENCES ................................................................. 1

    1.1     Defined Terms ......................................................................................................... 1
    1.2     Rules of Interpretation ........................................................................................... 9
    1.3     Computation of Time .............................................................................................. 9
    1.4     Governing Law ....................................................................................................... 9
    1.5     Reference to Monetary Figures ............................................................................ 10
    1.6     Reference to the Debtors or the Reorganized Debtors ......................................... 10
    1.7     Consent Rights of the Requisite Consenting Noteholders ................................... 10

ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS ........................................................ 10

    2.1     Administrative Claims .......................................................................................... 10
    2.2     Professional Claims.............................................................................................. 10
    2.3     Priority Tax Claims .............................................................................................. 11
    2.4     Restructuring Expenses ........................................................................................ 11

ARTICLE III CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND INTERESTS.................. 11

    3.1     Classification and Treatment of Classes of Claims and Interests........................ 11
    3.2     Special Provision Governing Unimpaired Claims ............................................... 14

ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN ......................................... 14

    4.1     General Settlement of Claims .............................................................................. 14
    4.2     Tulkal Assets Sale ................................................................................................ 14
    4.3     Subordination....................................................................................................... 14
    4.4     Sources of Cash for Plan Distributions ............................................................... 14
    4.5     Issuance of the New Notes; Substitute Consideration for Non-Qualified Holders ...................... 15
    4.6     Vesting of Assets in the Reorganized Debtors..................................................... 16
    4.7     Discharge from Notes, Instruments, Certificates and Other Documents............. 16
    4.8     Corporate Action.................................................................................................. 16
    4.9     Effectuating Documents; Further Transactions.................................................... 16
    4.10    Section 1146(a) Exemption .................................................................................. 17
    4.11    Managers, Directors and Officers ....................................................................... 17
    4.12    Incentive Plans and Employee and Retiree Benefits........................................... 17
    4.13    Preservation of Rights of Action ......................................................................... 17

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 18

    5.1     Assumption of Executory Contracts and Unexpired Leases ............................... 18
    5.2     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases............... 18
    5.3     Pre-Existing Payment and Other Obligations ..................................................... 19
    5.4     Rejection Damages Claims and Objections to Rejections ................................... 19
    5.5     Contracts and Leases Entered into After the Petition Date ................................. 19
    5.6     Reservation of Rights........................................................................................... 20

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ....................................................... 20

    6.1     Distributions on Account of Claims Allowed as of the Plan Effective Date................................ 20
    6.2     Special Rules for Distributions to Holders of Disputed Claims........................... 20

6.3    Disbursing Agent ........................................................................................... 20
6.4    Distributions of New Notes on Account of Allowed Existing Notes Claims............................ 21
6.5    Book-Entry Transfer: ATOP............................................................................. 22
6.6    Delivery of Distributions and Undeliverable or Unclaimed Distributions.................. 23
6.7    Claims Paid or Payable by Third Parties........................................................... 24
6.8    Setoffs ......................................................................................................... 25
6.9    Allocation Between Principal and Accrued Interest ........................................... 25

ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS........................... 25

7.1    Disputed Claims............................................................................................ 25
7.2    Resolution of Disputed Claims ....................................................................... 26
7.3    Estimation of Claims..................................................................................... 26
7.4    No Interest.................................................................................................... 26
7.5    No Distributions Pending Allowance ............................................................... 26
7.6    Disallowance of Claims and Interests .............................................................. 27

ARTICLE VIII EFFECT OF CONFIRMATION OF THE PLAN ................................... 27

8.1    Compromise and Settlement of Claims, Interests and Controversies .................. 27
8.2    Discharge of Claims and Termination of Interests............................................. 27
8.3    Releases by the Debtors ................................................................................. 27
8.4    Releases by Releasing Parties ......................................................................... 28
8.5    Exculpation ................................................................................................... 29
8.6    Injunction ..................................................................................................... 29
8.7    Protection Against Discriminatory Treatment .................................................. 29
8.8    Indemnification ............................................................................................. 29
8.9    Recoupment .................................................................................................. 30
8.10  Release of Liens ............................................................................................ 30
8.11  Reimbursement or Contribution ...................................................................... 30

ARTICLE IX CONDITIONS PRECEDENT TO THE PLAN EFFECTIVE DATE ............ 31

9.1    Conditions Precedent to the Plan Effective Date. .............................................. 31
9.2    Waiver of Conditions Precedent ..................................................................... 32
9.3    Effect of Non-Occurrence of Conditions to Consummation ............................... 32

ARTICLE X MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ....... 32

10.1  Modification of Plan ..................................................................................... 32
10.2  Effect of Confirmation of the Plan on Modifications......................................... 32
10.3  Revocation or Withdrawal of Plan ................................................................... 32

ARTICLE XI RETENTION OF JURISDICTION ..................................................... 33

11.1  Jurisdiction .................................................................................................. 33

ARTICLE XII MISCELLANEOUS PROVISIONS ................................................... 34

12.1  Additional Documents .................................................................................. 34
12.2  Payment of Statutory Fees ............................................................................. 34
12.3  Reservation of Rights .................................................................................... 35
12.4  Elimination of Vacant Classes ........................................................................ 35
12.5  Successors and Assigns.................................................................................. 35
12.6  Service of Documents ................................................................................... 35

12.7     Term of Injunctions or Stays ................................................................................................ 36
12.8     Entire Agreement ................................................................................................................... 36
12.9     Plan Supplement Exhibits ...................................................................................................... 36
12.10    Non-Severability .................................................................................................................... 36

**INTRODUCTION**

Grupo Posadas S.A.B. de C.V. and its Debtor affiliate in the above-captioned chapter 11 cases jointly propose this Plan.  Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in Article 1.1 of the Plan.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding claims against and interests in each Debtor pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The classifications of claims and interests set forth in <u>Article III</u> shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable.  The Plan does not contemplate substantive consolidation of the Debtors.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, businesses, properties and operations, projections, risk factors, a summary and analysis of this Plan and certain related matters.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, PARTICULARLY HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN**.

**ARTICLE I**

**DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND OTHER REFERENCES**

1.1    <u>**Defined Terms**</u>

1.    *"Ad Hoc Group"* means that certain ad hoc group of Consenting Noteholders party to the RSA and represented by Shearman & Sterling LLP.

2.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Plan Effective Date to preserve the Estates and operate the Debtors' businesses and (b) Allowed Professional Claims.

3.    "*Affiliate*" shall have the meaning ascribed to it in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

4.    "*Allowed*" means, with respect to any Claim or Interest: (a) a Claim or Interest (i) as to which no objection has been filed and that is evidenced by a Proof of Claim or Interest, as applicable, timely filed by the applicable bar date, if any, or (ii) that is not required to be evidenced by a filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code or a Final Order; or (b) a Claim or Interest that is allowed (i) pursuant to the Plan, (ii) in any stipulation that is entered into with the consent of the Requisite Consenting Noteholders (such consent not to be unreasonably withheld) and approved by the Bankruptcy Court, (iii) by Final Order of the Bankruptcy Court or (iv) pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection with the Plan and/or the RSA.  Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim from and after the Petition Date.  No Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.

5.    "*ATOP*" means DTC's Automated Tender Offer Program.

6.    "*ATOP Deadline*" means the last day on which Holders of Existing Notes Claims will be able to tender their Existing Notes into ATOP, which date shall be set forth in one or more notices delivered to such Holders by the Debtors and which shall be subject to extension with the consent of the Debtors and the Requisite Consenting Noteholders.

7.        "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other Claims, actions or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553 and 724(a) of the Bankruptcy Code or under similar or related local, state, federal or foreign statutes and common law, including fraudulent transfer laws.

8.        "*Ballot*" means the form or forms distributed to certain Holders of Claims that are entitled to vote on the Plan by which such parties may indicate acceptance or rejection of the Plan.

9.        "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

10.        "*Bankruptcy Court*" means the United States Bankruptcy Court in which the Chapter 11 Cases are commenced or another United States Bankruptcy Court with jurisdiction over the Chapter 11 Cases.

11.        "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure.

12.        "*Business Day*" means any day other than a Saturday, Sunday or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

13.        "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

14.        "*Cause of Action*" or "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity or otherwise.  Causes of Action also include: (a) all rights of setoff, counterclaim or recoupment and claims under contracts or for breaches of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550 or 553 of the Bankruptcy Code, (d) such claims and defenses as fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Action.

15.        "*Chapter 11 Cases*" means the Debtors' voluntary cases under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

16.        "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

17.        "*Class*" means a category of Holders of Claims or Interests pursuant to section 1122(a) of the Bankruptcy Code.

18.        "*Company*" means Grupo Posadas, S.A.B. de C.V.

19.        "*Collateral Annex Summary*" means the description of the collateral securing the New Notes attached as Exhibit C to the RSA.

20.        "*Collateral Asset Sale Waterfall*" has the meaning given such term in the Specified Indenture Terms.

21.        "*Compensation Agreements*" means, collectively, all executory employment, bonus, incentive, separation or severance agreements for current or former employees.

22.        "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

23.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

24.    "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

25.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

26.    "*Consenting Noteholders*" means the Holders of Existing Notes that have executed and delivered counterpart signature pages to the RSA or a Joinder to counsel to the Debtors from time to time, agreeing to be bound thereby.

27.    "*Consummation*" means the occurrence of the Plan Effective Date.

28.    "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

29.    "*Cure*" or "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default which is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

30.    "*Debtors*" means, collectively, Grupo Posadas S.A.B. de C.V. and Operadora del Golfo de México, S.A. de C.V.

31.    "*Definitive Documents*" means the definitive documents governing the Restructuring, including, without limitation, the Solicitation Materials and any motion seeking approval thereof, the Confirmation Order, the RSA Assumption Motion, the RSA Assumption Order, the New Notes Documents, the Plan Supplement and such other documents or agreements as may be reasonably necessary to implement the Restructuring contemplated by the RSA. The Definitive Documents and any modifications thereto will be consistent with the RSA (including all exhibits thereto) in all material respects and otherwise in form and substance reasonably acceptable to the Debtors and the Requisite Consenting Noteholders in each case, as set forth in the RSA.

32.    "*Disbursing Agent*" means, unless otherwise set forth in this Plan, the Reorganized Debtors or any Entity selected by the Debtors or Reorganized Debtors and identified in the Plan Supplement, as applicable, to make or facilitate distributions contemplated under the Plan.

33.    "*Disclosure Statement*" means the related disclosure statement with respect to the Plan, as may be amended, supplemented or modified from time to time.

34.    "*Disputed*" means a Claim or Interest, or any portion thereof, that (a) is not Allowed, (b) is not disallowed under the Plan, the Bankruptcy Code, as applicable, or a Final Order, (c) is the subject of an objection or request for estimation filed in the Bankruptcy Court and which objection or request for estimation has not been withdrawn or overruled by a Final Order of the Bankruptcy Court or (d) is otherwise disputed by the Debtors or the Reorganized Debtors in accordance with applicable Law, which dispute has not been withdrawn, resolved or overruled by a Final Order.

35.    "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors, on or after the Plan Effective Date, upon which the Debtors or their duly appointed Disbursing Agent shall make distributions to Holders of Allowed Claims and Interests entitled to receive distributions under the Plan.

36.    "*Distribution Record Date*" means the earlier of (i) the date set by the Court in the Scheduling Order and (ii) the date that the Confirmation Order is entered by the Bankruptcy Court. For the avoidance of doubt, the Distribution Record Date shall not apply to publicly traded securities, which shall receive distributions in accordance with the applicable procedures of the DTC.

37.    "*DTC*" means the Depository Trust Company.

38.    "*Entity*" shall have the meaning ascribed to it in section 101(15) of the Bankruptcy Code.

39.    "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

40.    "*Exculpated Claim*" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtors' in-court or out-of-court efforts to negotiate, enter into or implement the RSA, the RLA, the Chapter 11 Cases, the formulation, preparation, solicitation, dissemination, negotiation or filing of the Disclosure Statement, the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with or pursuant to the RSA, the RLA, the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan, to the maximum extent permitted by law.

41.    "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors, (b) any official committees appointed in the Chapter 11 Cases and each of their respective members, (c) to the maximum extent permitted by applicable Law, the Consenting Noteholders, (d) to the maximum extent permitted by applicable Law, the Existing Notes Trustee and (e) with respect to each of the foregoing, such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

42.    "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

43.    "*Existing Notes*" means the unsecured notes issued by Grupo Posadas, S.A.B. de C.V. pursuant to the Existing Notes Indenture.

44.    "*Existing Notes Claims*" means any Claim evidenced by or arising under or on account of the Existing Notes or the Existing Notes Indenture.

45.    "*Existing Notes Indenture*" means that certain indenture dated as of June 30, 2015, by and among Grupo Posadas, S.A.B. de C.V., as issuer, the guarantors party thereto, the Bank of New York Mellon, as Trustee, New York Paying Agent, Registrar and New York Transfer Agent and the Bank of New York Mellon (Luxembourg) S.A., as Luxembourg Listing Agent, Luxembourg Paying Agent and Luxembourg Transfer Agent, as amended and supplemented and in effect from time to time.

46.    "*Existing Notes Trustee*" means Citibank, N.A., in its capacity as trustee under the Existing Notes and that certain Agreement of Resignation, Appointment and Acceptance dated as of July 20, 2017, by and between Grupo Posadas, S.A.B. de C.V., the Bank of New York Mellon, the Bank of New York Mellon SA/NV, Luxembourg Branch and Banque Internationale à Luxembourg S.A.

47.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

48.    "*Final Order*" means an order or judgment of the Bankruptcy Court, or court of competent jurisdiction with respect to the subject matter, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing will have been denied, resulted in no stay pending appeal of such order or otherwise been dismissed with prejudice; provided,

that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order will not preclude such order from being a Final Order.

49.    "*General Unsecured Claim*" means any Claim other than an Administrative Claim, Priority Tax Claim, Secured Claim, Other Priority Claim, Intercompany Claim or Existing Notes Claim.

50.    "*Governmental Unit*" shall have the meaning ascribed to it in section 101(27) of the Bankruptcy Code.

51.    "*Guarantor*" means Operadora del Golfo.

52.    "*Holder*" means an Entity holding a Claim or Interest.

53.    "*Impaired*" means, with respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

54.    "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

55.    "*Intercompany Claim*" means a Claim held by a Debtor against a Debtor or an Affiliate of a Debtor.

56.    "*Intercompany Interest*" means an Interest in a Debtor held by a Debtor or an Affiliate of a Debtor.

57.    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

58.    "*Joinder*" means an executed form of the transfer agreement providing, among other things, that a transferee is bound by the terms of the RSA and substantially in the form attached to the RSA as Exhibit D.

59.    "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

60.    "*Letter of Transmittal*" means a letter to be delivered by the beneficial Holder of Claims in Class 3 to either (i) its Nominee or (ii) directly to Disbursing Agent in which such Holder: (a) certifies that it is either a Qualified Holder or a Non-Qualified Holder, (b) agrees to deliver its Existing Notes as contemplated in Section 6.4 hereof and (c) provides any additional certifications and representations as are consistent with the Plan; provided that a Holder that has tendered its Existing Notes and provided the requisite information through ATOP on or prior to the ATOP Deadline will not be required to deliver a Letter of Transmittal for Claims in respect of such Existing Notes.

61.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

62.    "*Net Cash Proceeds*" has the meaning given such term in Section 4.5 of the Plan.

63.    "*New Notes*" means the secured notes which shall be distributed to Qualified Holders by the Reorganized Company, and which shall incorporate all of the provisions set forth in the Specified Indenture Terms and shall otherwise be in form and substance reasonably acceptable to the Requisite Consenting Noteholders (except that any terms that affect the economic or legal rights of the Consenting Noteholders set forth in the RSA must be acceptable to the Requisite Consenting Noteholders in their sole and absolute discretion).

64.    "*New Notes Documents*" means, collectively, the New Notes, any indenture or other agreement governing the New Notes and any and all other agreements, documents and other instruments delivered or to be entered into in connection therewith, including, without limitation, any guarantee agreements, pledge and collateral

agreements, trust agreements, cash collateral accounts agreements, intercreditor agreements and other security documents, in each case if any, the terms of which documents shall be acceptable to the Debtors and the Requisite Consenting Noteholders.

65.     "*New Notes Trustee*" means the trustee acting as collateral agent for the New Notes, which trustee shall be engaged by the Debtors after confirming that such trustee is reasonably acceptable to the Requisite Consenting Noteholders, and any of its successors or assigns.

66.     "*Nominee*" shall have the meaning given such term in <u>Section 6.5</u> of the Plan.

67.     "*Non-Qualified Holder*" shall have the meaning given such term in <u>Section 6.4</u> of the Plan.

68.     "*Operadora del Golfo*" means Operadora del Golfo de México, S.A. de C.V.

69.     "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

70.     "*Person*" shall have the meaning ascribed to it in section 101(41) of the Bankruptcy Code.

71.     "*Petition Date*" means the date on which each of the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

72.     "*Plan*" means the joint prepackaged chapter 11 plan of reorganization filed by the Debtors, as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes and attachments thereto, which plan shall be consistent in all material respects with the Restructuring Term Sheet and RSA, and to the extent not consistent with the Restructuring Term Sheet and RSA in any material respect, in form and substance acceptable to the Debtors and the Requisite Consenting Noteholders.

73.     "*Plan Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the Plan Effective Date under <u>Section 9.1</u> of the Plan have been satisfied or waived (in the sole and absolute discretion of the Requisite Consenting Noteholders) in accordance with the Plan.

74.     "*Plan Supplement*" means any compilation of documents and forms of documents, agreements, schedules and exhibits to the Plan, which shall be filed by the Debtors prior to the Confirmation Hearing, and additional documents filed with the Bankruptcy Court prior to the Plan Effective Date as amendments to the Plan Supplement, each of which shall be consistent in all respects with, and shall otherwise contain, the terms and conditions set forth in the RSA and the Restructuring Term Sheet, where applicable, the New Notes Indenture, the Rejection Schedule, if any, and the list of directors and officers of the Reorganized Debtors.

75.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

76.     "*Pro Rata Share*" means with respect to any Holder of Claims in a Class receiving any distribution under the Plan, such Holder's pro rata share of such distribution measured by reference to the aggregate amount of all Allowed Claims in such Class in each case as of the date of such distribution.

77.     "*Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Plan Effective Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

78.     "*Professional Claim*" means a Claim by a professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

79.    "*Proof of Claim*" means a proof of claim filed against any of the Debtors in the Chapter 11 Cases.

80.    "*Qualified Holder*" shall have the meaning given such term in Section 6.4 of the Plan.

81.    "*Reinstatement or Reinstated*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, which, in all instances, shall be acceptable to the Requisite Consenting Noteholders in their sole and absolute discretion.

82.    "*Rejection Schedule*" means the schedule of Executory Contracts and Unexpired Leases in the Plan Supplement, as may be amended from time to time, setting forth certain Executory Contracts and Unexpired Leases for rejection as of the Plan Effective Date under section 365 of the Bankruptcy Code.

83.    "*Related Party*" means, collectively, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, heirs, executors and other professionals, in each case solely in their capacities as such, together with their respective past and present directors, officers, shareholders, partners, members, employees, agents, attorneys, representatives, heirs, executors and assigns, in each case solely in their capacities as such.

84.    "*Released Parties*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor, and each direct or indirect subsidiary of the Debtors or Reorganized Debtors; (c) each Consenting Noteholder; (d) any Holder of Existing Notes or Interests who executes an agreement with the Debtors, agreeing not to object to the Restructuring, who is also a Releasing Party; and (e) each Related Party of each Entity in clauses (a) through (d), provided that any Holder of a Claim or Interest who is not a Releasing Party shall not be a "Released Party" and any Related Party of such person or Entity who is not a Releasing Party (other than each Debtor, each Reorganized Debtor and each direct or indirect subsidiary of the Debtors or Reorganized Debtors) shall also not be a "Released Party."

85.    "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor, and each direct or indirect subsidiary of the Debtors or Reorganized Debtors; (c) each Consenting Noteholder; (d) all Holders of Claims or Interests that are eligible to vote to accept or reject the Plan that vote to accept for any Class; (e) all Holders of Claims that are deemed to accept the Plan and who have affirmatively opted into the releases provided by the Plan by checking the box on the applicable notice indicating that they opt to grant the releases provided in the Plan; (f) any Holder of Existing Notes who executes an agreement with the Debtors agreeing not to object to the Restructuring; and (g) each Related Party of each Entity in clauses (a) through (f), provided that, notwithstanding anything to the contrary in this Plan, a Holder of Interests shall neither be a Released Party nor a Releasing Party in such capacity unless such Holder of Interests executes an agreement with the Debtors agreeing not to object to the Restructuring.

86.    "*Reorganized Company*" means Grupo Posadas, S.A.B. de C.V., or any successor or assign, by merger, consolidation or otherwise, on or after the Plan Effective Date.

87.    "*Reorganized Debtors*" means a Debtor, or any successor or assign thereto, by merger, consolidation or otherwise, on and after the Plan Effective Date.

88.    "*Requisite Consenting Noteholders*" means those Consenting Noteholders holding a majority in principal amount of the outstanding Existing Notes held by the Ad Hoc Group.

89.    "*Restructuring*" means the restructuring of the Debtors, as contemplated by and described in the RSA, the Restructuring Term Sheet and the Plan.

90.    "*Restructuring Expenses*" shall have the meaning ascribed to it in Section 5(b)(xiv) of the RSA.

91.    "*Restructuring Term Sheet*" means that certain term sheet attached as Exhibit A to the RSA, as amended from time to time.

92.    "*RLA*" means that certain Letter Agreement dated as of August 17, 2021 between the Debtors and certain Holders of Existing Notes who are not party to the RSA pursuant to which such Holders expressed their support for the Restructuring.

93.    "*RSA*" means that certain support agreement for implementation of the Restructuring, dated as of August 17, 2021 between Grupo Posadas, S.A.B. de C.V., the Guarantor and the Consenting Noteholders, including all exhibits thereto.

94.    "*RSA Assumption Motion*" means a motion for entry of an order authorizing the Debtors' assumption of the RSA, which motion shall be in form and substance reasonably acceptable to the Requisite Consenting Noteholders.

95.    "*RSA Assumption Order*" means the order of the Bankruptcy Court granting the RSA Assumption Motion, which order shall be in form and substance reasonably acceptable to the Requisite Consenting Noteholders.

96.    "*Sale Period*" has the meaning given such term in <u>Section 4.6</u> of the Plan.

97.    "*Scheduling Order*" means the order of the Bankruptcy Court scheduling the Confirmation Hearing.

98.    "*SEC*" means the United States Securities and Exchange Commission.

99.    "*Secured Claim*" means a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable Law or by reason of a court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

100.    "*Securities Act*" means the United States Securities Act of 1933, as amended and now in effect and as it may further be amended from time to time prior to the Plan Effective date.

101.    "*Security*" means a security as defined in Section 2(a)(1) of the Securities Act of 1933.

102.    "*Security Documents*" means the form of guarantee and all security-related documents issued by and entered into by the Reorganized Company and the obligors pursuant to the indenture for the New Notes, which shall be in form and substance reasonably acceptable to the Requisite Consenting Noteholders and shall not adversely affect the economic or legal rights under the New Notes set forth in the RSA.

103.    "*Selling Agent*" has the meaning given such term in <u>Section 4.5</u> of the Plan.

104.    "*Selling Agent Agreement*" has the meaning given such term in <u>Section 4.5</u> of the Plan.

105.    "*Solicitation Agent*" means the claims, noticing and/or solicitation agent the Debtors may retain in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court.

106.    "*Solicitation Materials*" means the solicitation materials and documents included in the solicitation packages that will be sent to, among others, Holders of Claims and Interests entitled to vote to accept or reject the Plan, in compliance with Bankruptcy Rules 3017(d) and 2002(b), which shall be in form and substance acceptable to the Requisite Consenting Noteholders.

107.    "*Specified Indenture Terms*" means the terms of the New Notes indenture provisions attached as Exhibit B to the RSA.

108.    "*Subordinated Claim*" means any Claim against any of the Debtors that is subordinated in priority of payment pursuant to section 510(b) or section 510(c) of the Bankruptcy Code as determined by a Final Order of the Bankruptcy Court.

109.    "*Substitute Consideration*" has the meaning given such term in Section 4.5 of the Plan.

110.    "*Transfer*" means to sell, resell, reallocate, use, pledge, assign, transfer, hypothecate, participate, donate or otherwise encumber or dispose of, directly or indirectly (including through derivatives, options, swaps, pledges, forward sales or other transactions).

111.    "*Tulkal Assets*" has the meaning given to such term in the Specified Indenture Terms.

112.    "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or Interest to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check, (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution, (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution or (d) taken any other action necessary to facilitate such distribution.

113.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

114.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Impaired.

115.    "*United States Trustee*" means the United States Trustee for the jurisdiction in which the Chapter 11 Cases are commenced.

## 1.2    **Rules of Interpretation**

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender, (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (c) unless otherwise specified, any reference herein to an existing document, schedule or exhibit shall mean such document, schedule or exhibit as it may have been or may be amended, modified or supplemented, (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto, (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan, (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and (i) the Debtors shall be authorized to and may rely upon any written statement (including by email) from Shearman & Sterling LLP that confirms or declines a consent, waiver or other form of approval by the Requisite Consenting Noteholders.

## 1.3    **Computation of Time**

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or allowed herein.

## 1.4    **Governing Law**

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture or other agreement or document entered into expressly in connection

herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict of laws principles.

1.5    **Reference to Monetary Figures**

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

1.6    **Reference to the Debtors or the Reorganized Debtors**

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

1.7    **Consent Rights of the Requisite Consenting Noteholders**

Notwithstanding anything herein to the contrary, any and all consent rights of the Requisite Consenting Noteholders granted in the RSA with respect to the form and substance of this Plan, the Disclosure Statement, the motion seeking approval of the Disclosure Statement, the Plan Supplement and any other Definitive Documents, including any amendments, restatements, supplements or other modifications to such documents, and any consents, waivers or other deviations under or from any such documents, shall be incorporated herein.

**ARTICLE II**

**ADMINISTRATIVE AND PRIORITY CLAIMS**

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims, Professional Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims set forth in <u>Article III</u>.

2.1    **Administrative Claims**

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Claims) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either:  (a) on the Plan Effective Date, or as soon as reasonably practicable thereafter, (b) if the Administrative Claim is not Allowed as of the Plan Effective Date, no later than thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter, or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims without any further action by the Holders of such Allowed Administrative Claims.

2.2    **Professional Claims**

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Plan Effective Date must be filed no later than forty-five (45) days after the Plan Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code.  The Reorganized Debtors shall pay Professional Claims in Cash in the amount the Bankruptcy Court Allows.  From and after the Plan Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to, or action, order or approval of, the Bankruptcy Court.

2.3     **Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim due and payable on or before the Plan Effective Date shall receive in full and final satisfaction, settlement, release and discharge of and in exchange for such Holder's Allowed Priority Tax Claim:  (a) the treatment provided by section 1129(a)(9)(C) of the Bankruptcy Code, (b) a Cash payment on, or as soon as reasonably practicable after, the later of the Plan Effective Date or the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim equal to the amount of such Allowed Priority Tax Claim or (c) such other less favorable treatment as may be agreed upon between the Holder of such Allowed Priority Tax Claim and the applicable Debtor.  If payment is made in accordance with section 1129(a)(9)(C), installment payments shall be made quarterly and interest shall accrue in accordance with 26 U.S.C. § 6621.

2.4     **Restructuring Expenses**

The Restructuring Expenses payable by the Debtors shall constitute Allowed Administrative Claims and shall be paid in full in Cash pursuant to (and subject to) the RSA without the need to file a proof of such Claim and without further order of the Court.  On the Plan Effective Date, the Debtors or Reorganized Debtors, as applicable, shall pay the Restructuring Expenses that have accrued and are unpaid as of the Plan Effective Date, as set forth in the RSA. Notwithstanding anything to the contrary in the Plan, all Restructuring Expenses constitute obligations of the Debtors and shall be owed and paid by the Debtors regardless of whether the Restructuring is consummated.

## ARTICLE III

## CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND INTERESTS

This Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in <u>Article II</u>, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released or otherwise satisfied prior to the Plan Effective Date.

3.1     **Classification and Treatment of Classes of Claims and Interests**

The following chart designates the Class of Claims against and Interests in each of the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (c) deemed to accept or reject the Plan.  One or both of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in <u>Section 12.4</u> of the Plan.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 2 | Other Priority Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 3 | Existing Notes Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |

| 5 | Intercompany Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 6 | Interests | Unimpaired | Deemed to Accept; Not Entitled to Vote |

Except to the extent that a Holder of an Allowed Claim against or Interest in either of the Debtors, as applicable, agrees to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release and discharge of and in exchange for such Holder's Allowed Claim or Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the Plan Effective Date, or as soon as reasonably practicable thereafter:

(a)    **Class 1 (Secured Claims)**

    (1)    *Classification*: Class 1 consists of all Allowed Secured Claims against the applicable Debtor.

    (2)    *Treatment*: On the Plan Effective Date, each Holder of an Allowed Secured Claim shall, at the election of the applicable Debtor or Reorganized Debtor receive: (i) Cash in an amount equal to such Allowed Secured Claim, (ii) the property of the Debtors that constitutes collateral securing such Allowed Secured Claim, (iii) reinstatement of the legal, equitable and contractual rights of such Holder or (iv) such other treatment rendering its Allowed Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    (3)    *Voting*: Class 1 is Unimpaired. Holders of Allowed Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Secured Claims are not entitled to vote to accept or reject the Plan.

(b)    **Class 2 (Other Priority Claims)**

    (1)    *Classification*: Class 2 consists of all Allowed Other Priority Claims against the applicable Debtor.

    (2)    *Treatment*: Each Holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

    (3)    *Voting*: Class 2 is Unimpaired. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

(c)    **Class 3 (Existing Notes Claims)**

    (1)    *Classification*: Class 3 consists of the Existing Notes Claims against the applicable Debtor.

    (2)    *Allowance*: As of the Plan Effective Date, the Existing Notes Claims shall be Allowed in (i) an aggregate principal amount of $392,605,000 *plus* (ii) the aggregate amount of any accrued and unpaid interest on the respective series of notes through the Petition Date.

    (3)    *Treatment*: Each Holder of an Allowed Existing Notes Claim shall, subject to Section 6.4 of the Plan, be entitled to receive, for (i) each $1,000 in principal amount and (ii) the discharge in full of all accrued and unpaid interest prior to the Petition Date in respect of such Holder's Allowed Existing Notes Claim: New Notes in the aggregate principal amount equal to (a) $1,000 *plus* (b) an amount (the "Additional Initial Principal Amount")

equal to the sum of (x) four percent (4%) of a $1,000 principal amount (computed on the basis of daily compounding) multiplied by (y) a fraction equal to (A) the number of days that has elapsed from (and including) August 1, 2021 to (and including) the Plan Effective Date divided by (B) three hundred and sixty (360) days; provided that, if the Plan Effective Date shall occur on or after January 1, 2022, then (1) the amount calculated above for the period from August 1, 2021 to December 31, 2021 shall be paid in the form of Additional Initial Principal Amount to each Holder of an Allowed Existing Notes Claim on the Plan Effective Date and (2) the amount calculated above for the period from January 1, 2022 through the Plan Effective Date shall be paid in Cash on the Plan Effective Date.

(4)     *Voting*:  Class 3 is Impaired.  Holders of Existing Notes Claims are entitled to vote to accept or reject the Plan.

(d)     **Class 4 (General Unsecured Claims)**

(1)     *Classification*:  Class 4 consists of all Allowed General Unsecured Claims against the applicable Debtor.

(2)     *Treatment*:  On the Plan Effective Date, each Holder of an Allowed General Unsecured Claim shall, at the election of the applicable Debtor or Reorganized Debtor, (i) have the legal, equitable and contractual rights of such Holder Reinstated or (ii) receive Cash in an amount equal to such Allowed General Unsecured Claims.

(3)     *Voting*:  Class 4 is Unimpaired.  Holders of Allowed General Unsecured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed General Unsecured Claims are not entitled to vote to accept or reject the Plan.

(e)     **Class 5 (Intercompany Claims)**

(1)     *Classification*:  Class 5 consists of all Allowed Intercompany Claims against the applicable Debtor.

(2)     *Treatment*:  On the Plan Effective Date, each Allowed Intercompany Claim shall be Reinstated.

(3)     Voting: Class 5 is Unimpaired.  Holders of Allowed Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

(f)     **Class 6 (Interests)**

(1)     *Classification*: Class 6 consists of all Allowed Interests.

(2)     *Treatment*:  On the Plan Effective Date, each Allowed Interest shall be Reinstated.

(3)     *Voting*:  Class 6 is Unimpaired.  Holders of Allowed Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Interests are not entitled to vote to accept or reject the Plan.

3.2    **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

## ARTICLE IV

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

4.1    **General Settlement of Claims**

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, on the Plan Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests.

4.2    **Tulkal Assets Sale**

If the sale of the Tulkal Assets closes after the Petition Date, but prior to the Plan Effective Date, then the proceeds of such sale shall be placed in a segregated account, subject to the approval of the Bankruptcy Court, and on the Plan Effective Date, such proceeds shall be applied in accordance with the Collateral Asset Sale Waterfall. If the sale of the Tulkal Assets closes after the Plan Effective Date, then the proceeds of such sale shall be distributed in accordance with the Collateral Asset Sale Waterfall; provided that if, for any reason, the sale of the Tulkal Assets has been terminated or abandoned by any party to such sale and such sale has not been consummated in accordance with the terms of the contract of sale, and the Debtors have had an opportunity to pursue remedies to enforce the contract of sale (if determined by the Debtors that pursuing such remedies is advisable), then on the Plan Effective Date (or if terminated after the Plan Effective Date, then as reasonably practicable thereafter), after terminating any existing agreements, the Tulkal Assets shall be pledged to the New Notes Trustee with a first lien attaching to such assets, the Tulkal Assets shall become collateral in the Collateral Annex Summary and the Company shall take all steps necessary to perfect such lien as soon as practicable. For the avoidance of doubt, upon the termination of the RSA, the Consenting Noteholders shall have no rights whatsoever to or in respect of the Tulkal Assets or the proceeds of any sale of the Tulkal Assets, except to the extent provided for in the indenture and, if applicable, security documents for the New Notes, effective as of the Plan Effective Date, and in the event of the termination of the RSA, the Company shall have no obligation to keep such proceeds in a segregated account.

4.3    **Subordination**

The allowance, classification and treatment of all Claims and Interests under the Plan shall conform to and with the respective contractual, legal and equitable subordination rights of such Claims and Interests. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Reorganized Debtors reserve the right to re-classify any Allowed Claim (except for the Existing Notes Claims) or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

4.4    **Sources of Cash for Plan Distributions**

All Cash consideration necessary for the Reorganized Debtors to make payments or distributions pursuant to this Plan shall be obtained from Cash on hand from the Debtors, including Cash from business operations. Further, the Debtors and the Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan or the New Notes Documents.

4.5     **Issuance of the New Notes; Substitute Consideration for Non-Qualified Holders**

On the Plan Effective Date, the Reorganized Debtors are authorized and directed to issue, execute, deliver or otherwise bring into effect, as the case may be, to or for the benefit of the New Notes Trustee and the Qualified Holders of Allowed Existing Notes Claims, the New Notes Documents and any other instruments, certificates and other documents or agreements required to be issued, executed or delivered pursuant to the Plan, and take any other necessary actions in connection with the foregoing, in each case without need for further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Entity.

For so long as the New Notes are outstanding, the Company will use commercially reasonable efforts to obtain and maintain listing of the New Notes on the EuroMTF market of the Luxembourg Stock Exchange. The Reorganized Debtors will seek to obtain such listing so that it occurs as soon as reasonably practicable after the Plan Effective Date.

The issuance of the New Notes shall be exempt from registration under applicable securities laws pursuant to Section 4(a)(2) and Regulation S under the Securities Act and similar Blue Sky Laws provisions, as applicable, and any indentures governing the New Notes shall be exempt from qualification under the Trust Indenture Act of 1939 pursuant to Section 304(b) thereof. All documents, agreements and instruments entered into and delivered on or as of the Plan Effective Date contemplated by or in furtherance of the Plan, including the New Notes Documents and any other agreement or document related thereto or entered into in connection therewith shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by such applicable agreement).

On the Plan Effective Date, the guarantees, pledges, liens and other security interests, as applicable, granted pursuant to the New Notes Documents (whether prior to or on the Plan Effective Date) shall be deemed to have been granted in good faith as an inducement to the Qualified Holders of Allowed Existing Notes Claims to agree to the treatment contemplated by the Plan and (a) shall be deemed to be approved, (b) subject to the completion of certain perfection formalities under applicable local law, shall be legal, binding and creating enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Notes Documents, (c) shall be deemed perfected on the earlier of the date originally perfected and the Plan Effective Date, subject only to such Liens and security interests as may be permitted under the New Notes Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non bankruptcy law, including any applicable law of Mexico. The Reorganized Debtors and their affiliates granting such Liens and the persons and entities granted such Liens and security interests are authorized and directed to make all filings and recordings, and to obtain all governmental approvals and consents necessary, to establish and perfect such Liens and security interests under the provisions of the applicable law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and no such filings, recordings, approvals and consents shall be necessary), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. The Debtors or the Reorganized Debtors, as applicable, shall (i) in the case of Collateral (as described in the Collateral Annex Summary) constituting Real Estate (as described in the Collateral Annex Summary), file for registration each of the Security Documents with the relevant public registries and deliver to the New Notes Trustee a copy of the official receipt of such filings together with a letter from the relevant notary public certifying that such filings were duly made, in each case no later than two (2) Business Days following the Plan Effective Date, and (ii) in the case of the receivables and accounts comprising the Collateral (as described in the Collateral Annex Summary), file for registration each of the Security Documents with the relevant public registries no later than on the Plan Effective Date.

All New Notes under the Plan that would have been issuable and deliverable to Non-Qualified Holders, if they had been Qualified Holders, will be deposited with an agent (the "Selling Agent"). The Selling Agent shall offer such New Notes in one or more sale transactions within 210 days following the Plan Effective Date (the "Sale Period"), pursuant to a selling agreement to be entered into between the Debtors and the Selling Agent (the "Selling Agent Agreement").

The consideration to be received by Non-Qualified Holders under the Selling Agent Agreement is referred to as the "Substitute Consideration."

The price, terms and manner of sale will be on the best terms reasonably available at the time using a transparent open market process and shall be for Cash. The proceeds of any and all such sales (net of the costs of sale including the fees of any agent, broker, marketing agent, placement agent or underwriter appointed in relation to the sale and any taxes and provisions for taxes on sale) shall be distributed, on a pro rata basis, to such Non-Qualified Holders at the end of the Sale Period (the "Net Cash Proceeds").  In the event that a sale of such New Notes is unable to be consummated at any price within the Sale Period and the Net Cash Proceeds are zero, the amount of Substitute Consideration such Non-Qualified Holders are entitled to receive shall also be zero, and such New Notes shall be cancelled for no consideration.  None of the Debtors, the Ad Hoc Group and the Selling Agent shall have any liability for any loss or alleged loss arising from such sale or a failure to procure any purchaser for any such New Notes.

For the avoidance of doubt, any Non-Qualified Holders who would have been entitled to receive any New Notes under the Plan if they had been Qualified Holders shall only be entitled to receive the Substitute Consideration in respect thereof.

4.6    **Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided herein, or in any agreement, instrument or other document incorporated in the Plan (including the New Notes Documents), on the Plan Effective Date, all property in each Estate and all Causes of Action shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances.  On and after the Plan Effective Date, except as otherwise provided in the Plan or in the New Notes Documents, or any other agreement or document related thereto or entered into in connection therewith, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

4.7    **Discharge from Notes, Instruments, Certificates and Other Documents**

On the Plan Effective Date, except to the extent otherwise provided in the RSA or the Plan, other than any securities, instruments, certificates or other documents governing or evidencing obligations or interests that will remain Unimpaired under the Plan, the obligations of the Debtors or Reorganized Debtors under or in any way related to all notes, instruments, certificates, agreements and other documents evidencing Claims or Interests shall be discharged; provided, however, that, notwithstanding Confirmation or the occurrence of the Plan Effective Date, such discharge shall not affect (a) any such indenture or agreement that governs the rights of the Holder of a Claim, in effect solely for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan as provided herein and (b) any such notes or other documents entered into related to the incurrence of debt in the ordinary course after the Petition Date; provided further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order or the Plan or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under this Plan.

4.8    **Corporate Action**

The Debtors or the Reorganized Debtors, as applicable, are authorized to take all further corporate actions necessary to effectuate the RSA and the Plan and authorize each of the matters provided for by the Plan involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of the Reorganized Debtors, whether taken prior to or as of the Plan Effective Date, including the issuance of the New Notes.

4.9    **Effectuating Documents; Further Transactions**

On and after the Plan Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors thereof, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to

effectuate, implement and further evidence the terms and conditions of the Plan and the RSA, without the need for any approvals, authorizations or consents except for those expressly required under the Plan and the RSA.

4.10    **Section 1146(a) Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and, upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or governmental assessment.

4.11    **Managers, Directors and Officers**

Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, and except as may otherwise be disclosed in the Disclosure Statement, on the Plan Effective Date, the directors and officers who are identified in the Plan Supplement shall serve as the board of directors and officers of the Reorganized Debtors.  Pursuant to section 1129(a)(5), the Debtors will disclose in the Plan Supplement, on or prior to the Confirmation Date, to the extent known at the time of filing, the identity and affiliations of any Person proposed to serve on a Reorganized Debtor's board of directors and, to the extent such Person is an Insider, the nature of any compensation for such Person.  Corporate governance for each of the Reorganized Debtors, including charters, bylaws, operating agreements or other organization documents, as applicable and as may be amended, shall be consistent with section 1123(a)(6) of the Bankruptcy Code.

4.12    **Incentive Plans and Employee and Retiree Benefits**

Notwithstanding Section 5.1 of this Plan, the Compensation Agreements shall be neither assumed nor rejected.  Rather, the Compensation Agreements and the Debtors' benefits and obligations thereunder shall be deemed to "ride through" the Chapter 11 Cases unaffected by the Chapter 11 Cases (including any of the provisions of Article VIII of this Plan) and shall remain as benefits and obligations of the Reorganized Debtors after the Plan Effective Date.  Until after the Plan Effective Date, consistent with the *Final Order (I) Authorizing the Debtors to (A) Pay Certain Employee Wages and Other Compensation and Related Obligations and (B) Maintain and Continue Employee Benefits and Programs in the Ordinary Course, and (II) Authorizing and Directing Applicable Banks to Honor All Checks and Transfers Related to Such Obligations*, the Debtors and Reorganized Debtors shall make no payments on account of, nor be liable for, any severance, bonus or special incentive payments under the Compensation Agreements that are covered by section 503(c) of the Bankruptcy Code without the approval of the Bankruptcy Court.

All other employment, confidentiality and non-competition agreements, offer letters, vacation, holiday pay, retirement, supplemental retirement, indemnity, executive retirement, pension, deferred compensation, medical, dental, vision, life and disability insurance, flexible spending account and other health and welfare benefit plans, programs, agreements and arrangements, and all other wage, compensation, employee expense reimbursement and other benefit obligations, are deemed to be, and shall be treated as, Executory Contracts under the Plan and, on the Plan Effective Date, shall be deemed assumed pursuant to sections 365 and 1123 of the Bankruptcy Code.  Pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Plan Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid.

4.13    **Preservation of Rights of Action**

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Plan Effective Date.  **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any**

**and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, judicial, equitable or otherwise, or laches, shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order or approval of the Bankruptcy Court.

**ARTICLE V**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

5.1    <u>**Assumption of Executory Contracts and Unexpired Leases**</u>

On the Plan Effective Date, except as otherwise provided herein or pursuant to the Confirmation Order, Executory Contracts and Unexpired Leases shall be deemed assumed, without the need for any further notice to or action, order or approval of the Bankruptcy Court, as of the Plan Effective Date under section 365 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) was previously assumed or rejected, (b) previously expired or was terminated pursuant to its own terms, (c) is the subject of a motion to assume or assume and assign Filed on or before the Confirmation Date or (d) is designated specifically, or by category, as an Executory Contract or Unexpired Lease on the Rejection Schedule. The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions, assignments and rejections.

Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated hereunder. Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority or amount of any Claims that may arise in connection therewith.

5.2    <u>**Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**</u>

The Debtors or the Reorganized Debtors, as applicable, shall pay Cures, if any, on the Plan Effective Date or as soon as reasonably practicable thereafter, with the amount and timing of payment of any such Cure dictated by the Debtors' ordinary course of business. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the ordinary course amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be Filed with the Solicitation Agent on or before the deadline set by the Bankruptcy Court for objections to confirmation of the Plan; provided, however, that nothing herein shall prevent the Reorganized Debtors from paying any Cure Claim despite the failure of the relevant counterparty to File such request for payment of such Cure. Any such request that is not timely filed shall be disallowed and forever barred, estopped and enjoined from assertion, and shall not be enforceable against the Reorganized Debtors, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure in the Debtors'

ordinary course of business. The Reorganized Debtors also may settle any Cure Claim without any further notice to or action, order or approval of the Bankruptcy Court. **In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be filed with the Bankruptcy Court on or before the deadline set by the Bankruptcy Court for objections to confirmation of the Plan. Any such objection will be scheduled to be heard by the Bankruptcy Court at the earlier of the Confirmation Hearing or the Debtors' or the Reorganized Debtors', as applicable, first scheduled omnibus hearing for which such objection is timely filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.**

If there is any dispute regarding any Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment) or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and full payment of any applicable Cure pursuant to this Section 5.2, in the amount and at the time dictated by the Debtors' ordinary course of business, shall result in the full release and satisfaction of any Cures, Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Section 5.2, in the amount and at the time dictated by the Debtors' ordinary course of business, shall be deemed disallowed and expunged as of the Plan Effective Date without the need for any objection thereto or any further notice to or action, order or approval of the Bankruptcy Court.**

### 5.3    Pre-Existing Payment and Other Obligations

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors or Reorganized Debtors, as applicable, under such contract or lease. In particular, notwithstanding any applicable non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide: (a) payment to the contracting Debtors or Reorganized Debtors, as applicable, of outstanding and future amounts owing thereto under or in connection with rejected Executory Contracts or Unexpired Leases or (b) warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected Executory Contracts.

### 5.4    Rejection Damages Claims and Objections to Rejections

In the event that the rejection of an Executory Contract or Unexpired Lease by any of the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors or their respective properties or interests in property as agents, successors or assigns, unless a Proof of Claim is filed with the Solicitation Agent and served upon counsel for the Debtors or the Reorganized Debtors no later than thirty (30) days after the later of (a) the Plan Effective Date or (b) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection of such executory contract or unexpired lease. Any such Claims, to the extent Allowed, shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of this Plan.

### 5.5    Contracts and Leases Entered into After the Petition Date

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

5.6    **Reservation of Rights**

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1    **Distributions on Account of Claims Allowed as of the Plan Effective Date**

Except as otherwise provided in the Plan, a Final Order or as otherwise agreed to by the Debtors or the Reorganized Debtors (as the case may be) and the Holder of the applicable Allowed Claim, on the Distribution Date, the Reorganized Debtors shall make initial distributions under the Plan on account of Claims Allowed on or before the Plan Effective Date, subject to the Debtors' and Reorganized Debtors' right to object to Claims; provided, however, that (a) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Plan Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business or industry practice, subject to all of the Debtors' and Reorganized Debtors' legal and equitable defenses to or setoffs or recoupments against any such Administrative Claim, (b) Allowed Priority Tax Claims shall be paid in accordance with Section 2.3 and, to the extent any Allowed Priority Tax Claim is not due and owing on the Plan Effective Date, such Claim may be paid in full in Cash in accordance with the terms of any agreement between the Debtors or the Reorganized Debtors (as the case may be) and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business and (c) Allowed General Unsecured Claims with respect to liabilities incurred by the Debtors in the ordinary course of business prior to the filing of the Chapter 11 Cases shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business or industry practice, subject to all of the Debtors' and Reorganized Debtors' legal and equitable defenses to or setoffs or recoupments against any such General Unsecured Claim.

6.2    **Special Rules for Distributions to Holders of Disputed Claims**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claim has been Allowed or expunged. Any dividends or other distributions arising from property distributed to Holders of Allowed Claims in a Class and paid to such Holders under the Plan shall be paid also, in the applicable amounts, to any Holder of a Disputed Claim, as applicable, in such Class that becomes an Allowed Claim after the date or dates that such dividends or other distributions were earlier paid to Holders of Allowed Claims in such Class.

6.3    **Disbursing Agent**

Except as otherwise provided in the Plan, subject to Section 6.4, all distributions under the Plan shall be made by the Disbursing Agent in accordance with the terms of the Plan and RSA (to the extent applicable) on or as soon as practicable after the Plan Effective Date; provided that, for the avoidance of doubt, on the Plan Effective Date, or as soon as reasonably practicable thereafter, the Debtors will cause to be distributed, in accordance with DTC's customary procedures (which may be through ATOP or via DWAC, if ATOP is not available), the New Notes corresponding to each Qualified Holder that has completed the procedures specified in Section 6.4(b)(1). To the extent the Disbursing Agent is one or more of the Reorganized Debtors, the Disbursing Agent shall not be required to give

any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Plan Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent may be paid in Cash by the Reorganized Debtors.

6.4    **Distributions of New Notes on Account of Allowed Existing Notes Claims.**

(a)    New Notes are being issued only to Qualified Holders. A "Qualified Holder" is a Holder of an Allowed Existing Notes Claim who provides either one of the following two certifications (the "Certification"):

(1)    A certification that it is a "U.S. Person" as defined in Rule 902(k) under the Securities Act, and is either a "Qualified Institutional Buyer" as such term is defined in Rule 144A under the Securities Act or an "accredited investor" as defined in Regulation D under the Securities Act, and it acknowledges that it will be receiving "restricted securities" within the meaning of Rule 144 under the Securities Act; or

(2)    A certification that it is not a "U.S. Person" as defined in Rule 902(k) under the Securities Act and is qualified to participate in acquiring New Notes in accordance with the laws of its jurisdiction of location or residence.

Any Holder of an Allowed Existing Notes Claim that is not a Qualified Holder or that fails to provide either of the two certifications above in order to qualify as a Qualified Holder shall be a "Non-Qualified Holder." Non-Qualified Holders shall not be entitled to receive any New Notes and shall only be entitled to receive the Substitute Consideration in respect thereof, which may be zero.

(b)    To receive its entitlement pursuant to the Plan, each Holder of an Existing Notes Claim is required to take one (1) of the following actions as applicable to verify its position in the Existing Notes and to provide the Certification:

(1)    on or prior to the ATOP Deadline, tender its Existing Notes into ATOP and submit the required information, including the Certification, through ATOP; or

(2)    after the ATOP Deadline, review, complete and return to the Disbursing Agent a duly-completed Letter of Transmittal together with documents required in connection therewith and surrender and transfer to the applicable indenture trustee via DWAC its Existing Notes.

(c)    The Debtors reserve the right, on or promptly after the Plan Effective Date, to request that DTC impose a "chill order" on any Existing Notes positions that have not been validated prior to the ATOP Deadline.

(d)    On the Plan Effective Date, or as soon as reasonably practicable thereafter, the Debtors will cause to be distributed, in accordance with DTC's customary procedures (which may be through ATOP or via DWAC, if ATOP is not available), the New Notes corresponding to each Qualified Holder that has completed the procedures specified in clause (b)(1) above; provided, however, that if the Plan Effective Date has not occurred by thirty (30) calendar days after the ATOP Deadline, the foregoing deadlines may be extended and the foregoing procedures may be amended by the Debtors and the Consenting Noteholders in a written notice provided to the Disbursing Agent.

(e)    The Substitute Consideration for Non-Qualified Holders shall be distributed by the Selling Agent after the Sale Period, as described in <u>Section 4.5</u> of the Plan.

(f)    The Disbursing Agent and/or any applicable broker or agent shall use reasonable best efforts to cause the tender into ATOP or transfer via DWAC for cancellation of note positions (if ATOP is not available) of all the Existing Notes. Any Holder of the Existing Notes who fails to (i) surrender the applicable Existing Notes required to be tendered under the Plan or verify its position in the applicable Existing Notes and (ii) submit (x) the required information electronically through ATOP on or prior to the ATOP Deadline or (y) a completed Letter of Transmittal to the Disbursing Agent together with any documents required in connection therewith after the ATOP Deadline and within one hundred eighty (180) days after the Plan Effective Date shall have its Claims and its distribution of New Notes pursuant to the Plan on account of its Existing Notes Claims discharged and forfeited and shall not participate in any distribution under the Plan. Any property in respect of such forfeited Existing Notes Claims would revert to the Reorganized Debtors.

The Debtors believe that the solicitation of votes from Qualified Holders to accept or reject the Plan is not a public offering (and is therefore exempt from the registration requirements of Section 5 of the Securities Act pursuant to Section 4(a)(2) of the Securities Act) or is an offering of securities outside the United States (and therefore is not subject to the registration requirements of Section 5 as set forth in Regulation S, 230 CFR 900 et seq).

The Debtors believe that the solicitation of votes from Non-Qualified Holders constitutes a cash tender offer for the Existing Notes that complies with Regulation 14E under the Securities Exchange Act of 1934, 240 CFR 14e-1 et seq.

6.5    **Book-Entry Transfer: ATOP**

The Disbursing Agent will work with DTC to establish the distribution event on the Plan Effective Date (or as soon as reasonably practicable thereafter) relating to the Existing Notes on DTC's ATOP system. A beneficial owner of Existing Notes that are held by or registered in the name of a broker, dealer, commercial bank, trust company or other nominee or custodian (each, a "<u>Nominee</u>") is urged to contact such Nominee promptly if such beneficial owner wishes to participate and receive a distribution for Claims in respect of Existing Notes on the Plan Effective Date or as soon as reasonably practicable thereafter. Only Nominees that are participants in DTC's ATOP system can effectuate an electronic delivery of the Existing Notes on a Holder's behalf. Each beneficial Holder of the Existing Notes who wishes to participate and receive a distribution for Claims in respect of Existing Notes on the Plan Effective Date or as soon as reasonably practicable thereafter must allow sufficient time for its Nominee to effectuate the electronic delivery of its Existing Notes via ATOP on or before the ATOP Deadline.

At the Holder's instruction, a Nominee will electronically deliver the Holder's Existing Notes into the appropriate contra-CUSIP[2] on DTC's ATOP platform on or before the ATOP Deadline. Once DTC receives the Nominee's instruction to initiate an electronic delivery of a Holder's Existing Notes into the appropriate contra-CUSIP, the Nominee will receive a unique "voluntary offer instruction" ("<u>VOI</u>") generated by ATOP. By tendering a Holder's Existing Notes into ATOP and receiving a VOI, the Nominee has made an express acknowledgment for such Holder that such Holder has reviewed and agrees to be bound by the certifications made through ATOP and that the Debtors may enforce such certifications against such Holder.

ALL QUESTIONS AS TO THE VALIDITY, FORM, ELIGIBILITY (INCLUDING TIME OF RECEIPT) AND ACCEPTANCE OF INFORMATION SUBMITTED THROUGH ATOP AND TENDERED EXISTING NOTES WILL BE RESOLVED BY THE REORGANIZED DEBTORS, WHOSE DETERMINATION WILL BE FINAL AND BINDING, SUBJECT ONLY TO REVIEW BY THE BANKRUPTCY COURT UPON APPLICATION WITH DUE NOTICE TO ANY AFFECTED PARTIES IN INTEREST. THE DEBTORS AND THE REORGANIZED DEBTORS RESERVE THE RIGHT TO REJECT ANY AND ALL SUBMISSIONS THROUGH ATOP AND TENDERED EXISTING NOTES NOT IN PROPER FORM, OR SUBMISSIONS THROUGH ATOP AND TENDERED EXISTING NOTES THE DEBTORS' OR REORGANIZED DEBTORS'

---

[2]    A contra-CUSIP is the CUSIP used to segregate a Holder's position for a voluntary distribution event at the instruction of the Holder.

ACCEPTANCE OF WHICH WOULD, IN THE OPINION OF THE DEBTORS (OR THE REORGANIZED DEBTORS, AS APPLICABLE) OR THEIR COUNSEL, BE UNLAWFUL.

6.6    **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

       (a)      Delivery of Distributions

Except as otherwise provided in the Plan (including in Section 6.4 above), distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Reorganized Debtors or the Disbursing Agent, as appropriate: (a) as indicated on the applicable register or in the Debtors' records as of the date of any such distribution, (b) to the signatory set forth on any of the Proofs of Claim filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is filed or if the Debtors have not been notified in writing of a change of address), (c) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors or the applicable Disbursing Agent, as appropriate, after the date of any related Proof of Claim or (d) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date, provided, however, that distributions on account of the Existing Notes Claims shall be made in accordance with Section 6.4 above. For the avoidance of doubt, the Distribution Record Date shall not apply to publicly traded securities, which shall receive distributions in accordance with the applicable procedures of the DTC. Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Reorganized Debtors and the Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence or willful misconduct.

       (b)      Minimum; *De Minimis* Distributions.

Notwithstanding anything to the contrary contained in the Plan, the Disbursing Agent shall not be required to distribute Cash or other property to the Holder of any Allowed Claim or Allowed Interest if the amount of Cash or other property to be distributed on account of such Allowed Claim or Allowed Interest is less than $50. Any Holder of an Allowed Claim or Allowed Interest on account of which the amount of Cash or other property to be distributed is less than such amount shall have such Claim or Interest, as applicable, discharged and shall be forever barred from asserting such Claim or Interest against the Debtors, the Reorganized Debtors or their respective property. Any Cash or other property not distributed pursuant to this provision shall be the property of the Reorganized Debtors.

       (c)      Compliance Matters

In connection with the Plan, to the extent applicable, the Reorganized Debtors or the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors or the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. The Reorganized Debtors and the Disbursing Agent may require, as a condition to the receipt of a distribution, that the Holder of an Allowed Claim complete the appropriate Form W-8 or Form W-9, as applicable to each Holder. If such Holder fails to comply with such request within one year, such distribution shall be deemed an Unclaimed Distribution. Notwithstanding any other provision of this Plan to the contrary, (a) each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution and (b) no distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Reorganized Debtors for the payment and satisfaction of such tax obligations.

(d)      Cash Payments

Except as otherwise set forth in this Section 6.6(d), distributions of Cash under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor (or Debtors) in U.S. dollars.  At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.  Cash payments to creditors outside of the United States of America may be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(e)      Undeliverable and Unclaimed Distributions

(1)      *Undeliverable Distributions.*  If any distribution to a Holder of an Allowed Claim is returned to the Reorganized Debtors or the Disbursing Agent as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Reorganized Debtors or the Disbursing Agent are notified in writing of such Holder's then-current address or other necessary information for delivery.  Subject to the succeeding sentence, the Reorganized Debtors or their duly appointed Disbursing Agent shall retain undeliverable distributions until such time as a distribution becomes deliverable.  Each Holder of an Allowed Claim whose distribution remains (i) undeliverable for one hundred and eighty (180) days after the distribution is returned as undeliverable or (ii) otherwise has not been deposited, endorsed or negotiated within one hundred and eighty (180) days of the date of issuance shall have no claim to or interest in such distribution and shall be forever barred from receiving any distribution under the Plan.  Nothing contained in this Plan shall require the Debtors, the Reorganized Debtors or the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

(2)      *Reversion.*  Any distribution under the Plan that is an Unclaimed Distribution for a period of one hundred and eighty (180) days after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the applicable Reorganized Debtor.  Upon such revesting, the Claim or Interest of any Holder or its successors with respect to such property shall be cancelled, discharged and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

## 6.7      Claims Paid or Payable by Third Parties

(a)      Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall repay, return or deliver any distribution held by or transferred to the Holder to the applicable Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

(b)      Claims Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement,

such Claim may be expunged to the extent of any agreed upon satisfaction without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

(c)      Applicability of Insurance Policies

Except as otherwise expressly provided herein, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

6.8      **Setoffs**

Except as otherwise expressly provided herein, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim (other than Existing Notes Claims), and the distributions to be made pursuant to the Plan on account of such Allowed Claim (other than Existing Notes Claims) before any distribution is made on account of such Allowed Claim, any Claims, rights and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim (other than Existing Notes Claims), to the extent such Claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Plan Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights and Causes of Action that such Reorganized Debtor may possess against such Holder. In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has or intends to preserve any right of setoff pursuant to section 553 or otherwise.

6.9      **Allocation Between Principal and Accrued Interest**

Except as otherwise provided in the Plan and to the extent permitted by applicable Law, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan for income tax purposes as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest accrued through and including the Plan Effective Date.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

7.1      **Disputed Claims**

Notwithstanding section 502(a) of the Bankruptcy Code, and in light of the Unimpaired status of all General Unsecured Claims under the Plan, except as required by Article II, Section 5.4 and any other sections of the Plan that require filing Proofs of Claims, Holders of Claims need not file Proofs of Claim, and the Reorganized Debtors and the Holders of Claims shall determine, adjudicate and resolve any disputes over the validity and amounts of such Claims in the ordinary course of business as if the Chapter 11 Cases had not been commenced, except that (unless expressly waived pursuant to the Plan) the Allowed amount of such Claims shall be subject to the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code, to the extent applicable.

All Proofs of Claim filed in these Chapter 11 Cases, except those permitted by Article II and Section 5.4, shall not be considered Allowed for any purposes under the Plan and without further action by the Debtors. Upon the Plan Effective Date, all Proofs of Claim filed against the Debtors, regardless of the time of filing, and including Claims filed after the Plan Effective Date, shall be deemed withdrawn and expunged, other than as provided below, and such creditor that Files a Proof of Claim with the Bankruptcy Court retains any right it may have to pursue remedies in a

forum other than the Bankruptcy Court in accordance with applicable law, and the Debtors and Reorganized Debtors shall retain all rights to assert all claims, legal and equitable defenses and setoffs or recoupments with respect to all such Claims.  Notwithstanding anything in this Section 7.1, (a) all Claims against the Debtors that result from the Debtors' rejection of an executory contract or unexpired lease, (b) disputes regarding the amount of any Cure pursuant to section 365 of the Bankruptcy Code and (c) Claims that the Debtors seek to have determined by the Bankruptcy Court shall in all cases be determined by the Bankruptcy Court; provided that any Claim under a New Notes Document shall be subject solely to the jurisdiction and choice of forum provisions therein.  From and after the Plan Effective Date, the Reorganized Debtors may satisfy, dispute, settle or otherwise compromise any Claim without approval of the Bankruptcy Court.

7.2    **Resolution of Disputed Claims**

Except insofar as a Claim is Allowed under the Plan, the Debtors, the Reorganized Debtors or other parties-in-interest, as applicable, shall be entitled to object to the Claim.  Any objections to Claims shall be served and filed on or before the date that is one hundred twenty (120) days after the Plan Effective Date or by such later date as ordered by the Bankruptcy Court.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder thereof if service is effected in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004, or (b) by first class mail, postage prepaid, on any counsel that has appeared on the Holder's behalf in the Chapter 11 Cases.  The Debtors and the Reorganized Debtors shall be authorized to resolve all Disputed Claims or Interests by withdrawing or settling such objections thereto or by litigating to Final Order in the Bankruptcy Court the validity, nature and/or amount thereof.  All Claims not objected to by the end of such 120-day period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Plan Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Plan Effective Date with respect to any Disputed Claim, including the Causes of Action retained pursuant to Section 4.13.

7.3    **Estimation of Claims**

The Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated in accordance with section 502(c) of the Bankruptcy Code for any reason, regardless of whether any Entity previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, the estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

7.4    **No Interest**

Unless otherwise expressly provided in the Plan or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Plan Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

7.5    **No Distributions Pending Allowance**

Notwithstanding any other provision of this Plan to the contrary, no payments or distributions of any kind or nature shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order and the Disputed Claim has become an Allowed Claim.  Distributions on account of Disputed Claims that become Allowed Claims shall be made pursuant to Section 6.2.

7.6    **Disallowance of Claims and Interests**

  All Claims of any Entity from which property is sought by the Debtors under section 542, 543, 550 or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

## ARTICLE VIII

## EFFECT OF CONFIRMATION OF THE PLAN

8.1    **Compromise and Settlement of Claims, Interests and Controversies**

  Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests, and is fair, equitable and reasonable.  In accordance with the provisions of the Plan, pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Plan Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities.

8.2    **Discharge of Claims and Termination of Interests**

  **Except as otherwise provided for herein and effective as of the Plan Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property or Estates, (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan, (c) all Claims and Interests shall be satisfied, discharged and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code, and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, their assets and their properties any other Claims or Interests based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Plan Effective Date.  For the avoidance of doubt, nothing in this section shall affect the rights of Holders of Claims and Interests to seek to enforce the Plan or any post-Plan Effective Date obligations, including the distributions to which Holders of Allowed Claims and Interests are entitled under the Plan.**

8.3    **Releases by the Debtors**

  **Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided herein, for good and valuable consideration, as of the Plan Effective Date, the Released Parties are conclusively, absolutely, unconditionally, irrevocably and forever deemed released and discharged by the Debtors, the Reorganized Debtors and the Estates from any and all actions, Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, asserted or that could possibly have been asserted on behalf of the Debtors, that the**

Debtors, the Reorganized Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Existing Notes Indenture, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, solicitation or preparation of the RSA, the RLA, the Disclosure Statement, the Plan, the Plan Supplement or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Plan Effective Date; _provided_, **however**, that the foregoing provisions of this <u>Section 8.3</u> shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud or criminal conduct; **provided** <u>further</u> that nothing in this <u>Section 8.3</u> shall release any post-Plan Effective Date obligations of any party under the Plan, or any document, instrument or agreement executed to implement, or otherwise given effect under, the Plan, including the New Notes Documents and any other agreement or document related thereto or entered into in connection therewith, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this <u>Section 8.3</u>, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, (b) a good faith settlement and compromise of the Claims released by this <u>Section 8.3</u>, (c) in the best interests of the Debtors and all Holders of Claims and Interests, (d) fair, equitable and reasonable, (e) given and made after due notice and opportunity for hearing and (f) a bar to any of the Debtors asserting any Claim or Cause of Action released by this <u>Section 8.3</u>.

8.4    <u>Releases by Releasing Parties</u>

As of the Plan Effective Date, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the Estates and the Released Parties, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that such Releasing Party asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Existing Notes Indenture, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, solicitation or preparation of the RSA, the RLA, the Disclosure Statement, the Plan, the Plan Supplement or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Plan Effective Date; _provided_, **however**, that the foregoing provisions of this <u>Section 8.4</u> shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud or criminal conduct; **provided** <u>further</u> that nothing in this <u>Section 8.4</u> shall release any post-Plan Effective Date obligations (except Cure Claims that have not been timely filed) of any party or entity under the Plan, or any document, instrument or agreement executed to implement, or otherwise given effect under, the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this <u>Section 8.4</u>, which includes by reference each of the related

provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) important to the Plan, (b) in exchange for the good and valuable consideration provided by the Debtors, the Reorganized Debtors, the Estates and the Released Parties, (b) a good faith settlement and compromise of the Claims released by this <u>Section 8.4</u>, (c) in the best interests of the Debtors and all Holders of Claims and Interests, (d) fair, equitable and reasonable, (e) given and made after due notice and opportunity for hearing and (f) a bar to any Entity granting a release under this <u>Section 8.4</u> from asserting any Claim or Cause of Action released by this <u>Section 8.4</u>.

8.5    <u>Exculpation</u>

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Party or any obligation, Cause of Action or liability for any Exculpated Claim; <u>provided</u>, <u>however</u>, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct; <u>provided</u>, <u>further</u>, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

8.6    <u>Injunction</u>

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold or may hold Claims or Interests that have been released pursuant to <u>Section 8.3</u> or <u>Section 8.4</u>, discharged pursuant to <u>Section 8.2</u> or are subject to exculpation pursuant to <u>Section 8.5</u> are permanently enjoined, from and after the Plan Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests, (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests, (c) creating, perfecting or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated or settled pursuant to the Plan.

8.7    <u>Protection Against Discriminatory Treatment</u>

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

8.8    <u>Indemnification</u>

On and from the Plan Effective Date, and except as otherwise provided under the Plan or prohibited by applicable law, all indemnification provisions in place as of the Plan Effective Date (whether in the by-laws, certificates of incorporation or formation, other organizational documents, board resolutions, indemnification agreements, employment contracts or otherwise) for current and former directors, officers, managers, employees,

attorneys, accountants, investment bankers and other professionals of the Debtors, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the effectiveness of the Restructuring; provided that the Reorganized Debtors shall not indemnify officers, directors, managers, employees, attorneys, accountants, investment bankers or other professionals of the Debtors for any claims or Causes of Action arising out of or relating to any act or omission that is a criminal act or constitutes intentional fraud, gross negligence or willful misconduct.

## 8.9    **Recoupment**

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has or intends to preserve any right of recoupment.

## 8.10    **Release of Liens**

Except (a) with respect to the Liens securing Secured Claims (depending on the treatment of such Claims) or (b) as otherwise provided in the Plan or RSA, or in any contract, instrument, release or other agreement or document created pursuant thereto, on the Plan Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall vest and revert to the applicable Reorganized Debtor and its successors and assigns.

From and after the Plan Effective Date, any Holder of a Secured Claim (and the applicable agents for such Holder) secured by Liens or security interests which are to be released under this Plan shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested to give effect to the Plan by the Reorganized Debtors and to evidence the release of such Liens and/or security interests, including the execution, delivery and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial or local agency, records office or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens. To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Plan Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests in accordance with the Plan, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

## 8.11    **Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Plan Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless, prior to the Plan Effective Date, (a) such Claim has been adjudicated as noncontingent or (b) the relevant Holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

# ARTICLE IX

## CONDITIONS PRECEDENT TO THE PLAN EFFECTIVE DATE

9.1     **Conditions Precedent to the Plan Effective Date**.

It shall be a condition to the Plan Effective Date that the following conditions shall have been satisfied or waived pursuant to Section 9.2 of the Plan:

(a)     the Bankruptcy Court shall have entered the Confirmation Order, which shall be a Final Order, in form and substance consistent in all respects with the RSA and otherwise in form and substance reasonably acceptable to the Debtors and the Requisite Consenting Noteholders;

(b)     the RSA shall remain in full force and effect and shall not have been terminated at any time;

(c)     the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate the Plan;

(d)     the final version of each of the Plan, the Definitive Documents and all documents contained in any supplement to the Plan, including the Plan Supplement and any exhibits, schedules, amendments, modifications or supplements thereto or other documents contained therein, shall have been executed or filed, as applicable, in form and substance consistent in all respects with the RSA (including all exhibits thereto) and the Plan;

(e)     all provisions set forth in the Specified Indenture Terms shall be incorporated into an indenture governing the New Notes and all other provisions of such indenture shall be reasonably acceptable to the Requisite Consenting Noteholders and do not adversely affect the economic or legal rights of the New Notes as set forth in the RSA;

(f)     the indenture with respect to the New Notes shall have been duly executed and delivered by all of the Entities that are parties thereto and all conditions precedent (other than any conditions related to the occurrence of the Plan Effective Date) to the effectiveness of the New Notes shall have been satisfied or duly waived in writing in accordance with the terms of the New Notes Documents and the issuance of each of the New Notes shall have occurred;

(g)     the form of guarantee and all security-related documents issued by and entered into by the Company and the obligors pursuant to the indenture for the New Notes shall be in form and substance reasonably acceptable to the Requisite Consenting Noteholders and do not adversely affect the Consenting Noteholders' economic or legal rights set forth in the RSA (including all exhibits thereto);

(h)     the initial collateral described in the Collateral Annex Summary shall be conveyed or pledged, as applicable, in favor of the New Notes Trustee and the Company shall have executed and formalized (before a Mexican notary public) the Security Documents, as necessary, to create, on the Plan Effective Date, a first priority lien on all such collateral under applicable Law (subject to the terms of the RSA);

(i)     all professional fees and expenses of retained professionals that require the Bankruptcy Court's approval shall have been paid in full or amounts sufficient to pay such fees and expenses after the Plan Effective Date shall have been placed in a professional fee escrow account pending the Bankruptcy Court's approval of such fees and expenses;

(j)     all Restructuring Expenses incurred during the period prior to the Plan Effective Date, to the extent invoiced to the Debtors, shall have been paid in Cash in full; and

(k)     all accrued reasonable and documented fees and expenses of the New Notes Trustee, to the extent invoiced to the Debtors, shall be fully satisfied in Cash on the Plan Effective Date in accordance with the RSA.

9.2    **Waiver of Conditions Precedent**

With the consent of the Requisite Consenting Noteholders (to be provided in their sole and absolute discretion), the Debtors may amend, modify, supplement or waive any of the conditions to the Plan Effective Date set forth in Section 9.1 at any time without any notice to any other parties in interest and without any further notice to or action, order or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan.

9.3    **Effect of Non-Occurrence of Conditions to Consummation**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests or Causes of Action; (b) prejudice in any manner the rights of any Debtor, the Consenting Noteholders or any other Entity; or (c) constitute an admission, acknowledgment, offer or undertaking of any sort by any Debtor, Consenting Noteholder or any other Entity.

## ARTICLE X

## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

10.1    **Modification of Plan**

Subject to the limitations contained in the Plan and the RSA, the Debtors reserve the right to alter, amend or modify the Plan (including any exhibit or Plan Supplement) and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and those restrictions set forth in the Plan and the RSA, the Debtors expressly reserve their rights to alter, amend or modify materially the Plan (including any exhibit or Plan Supplement) one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan (including any exhibit or Plan Supplement), or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

10.2    **Effect of Confirmation of the Plan on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation of votes thereon pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

10.3    **Revocation or Withdrawal of Plan**

Subject to the conditions and limitations set forth in the RSA, the Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Plan Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any allowance of a Claim or any other settlement or compromise embodied in the Plan, any assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests or Causes of Action, (2) prejudice in any manner the rights of any Debtor or any other Entity or (3) constitute an admission, acknowledgement, offer or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1    **Jurisdiction**

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Plan Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under and/or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by applicable law, including jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims or Interests;

(b)    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)    resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code, (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed, (c) the Reorganized Debtors' amendment, modification or supplement, after the Plan Effective Date, pursuant to Article V, of the list of Executory Contracts and Unexpired Leases to be rejected or otherwise and (d) any dispute regarding whether a contract or lease is or was executory or expired;

(d)    ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(e)    adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Plan Effective Date;

(f)    enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan or the Confirmation Order, including contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Plan Supplement or the Disclosure Statement, including, for the avoidance of doubt, the New Notes Documents and any other agreement or document related thereto or entered into in connection therewith;

(g)    enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

(h)    grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

(i)    issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

(j)    hear, determine and resolve any cases, matters, controversies, suits, disputes or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Section 6.7(a), (b) with respect to the releases, injunctions and other provisions contained in

33

Article VIII, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions, (c) that may arise in connection with the Consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order, or any Entity's rights arising from or obligations incurred in connection with the Plan or the Confirmation Order, including those arising under agreements, documents or instruments executed in connection with the Plan, (d) related to section 1141 of the Bankruptcy Code or (e) with respect to any Claims arising under or in connection with the Existing Notes asserted against the Reorganized Debtors by any current or former Holder of Existing Notes;

(k)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(l)     consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(m)     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement or the Confirmation Order;

(n)     hear and determine matters concerning U.S. state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(o)     enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

(p)     adjudicate any and all disputes arising from or relating to distributions under the Plan;

(q)     hear and determine all disputes involving the existence, nature, scope or enforcement of any exculpations, discharges, injunctions and releases granted in connection with and under the Plan, including under Article VIII;

(r)     enforce all orders previously entered by the Bankruptcy Court; and

(s)     hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

### 12.1    **Additional Documents**

On or before the Plan Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 12.2    **Payment of Statutory Fees**

(a)     All fees payable pursuant to section 1930 of title 28 of the United States Code, and any applicable interest payable under section 3717 of title 31 of the United States Code, as of the entry of the Confirmation Order as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Plan Effective Date. The Debtors or the Reorganized Debtors shall continue to pay fees pursuant to section 1930 of title 28 of the United States Code, and any applicable interest payable under section 3717 of title 31 of the United States Code, until the Chapter 11 Cases are converted, dismissed or closed by entry of the Final Decree.

(b)      The Debtors or the Reorganized Debtors shall file and serve on the United States Trustee quarterly reports of the disbursements made, which reports will be filed and served on or prior to the later of (a) the date that is thirty (30) days after the conclusion of each calendar quarter that ends after the Plan Effective Date and (b) such later date as has been agreed to by the Debtors or the Reorganized Debtors and the United States Trustee, until the Chapter 11 Cases are converted, dismissed or closed by entry of the Final Decree.  Any such reports shall be prepared consistent with (both in terms of content and format) the applicable Bankruptcy Court and United States Trustee's Guidelines for such matters.  Nothing herein will prejudice the right of the Debtors to seek closure of any of the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code, and no appeal of any relief granted pursuant hereto shall prejudice the Debtors' right to argue that any of the Chapter 11 Cases have been fully administered within the meaning of section 350(a) of the Bankruptcy Code.

### 12.3    **Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Plan Effective Date.

### 12.4    **Elimination of Vacant Classes**

Any Class of Claims or Interests that (a) does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing or (b) is entitled to vote on the Plan but with respect to which no Ballots are cast or no Ballots are deemed to be cast shall be deemed eliminated from the Plan for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 12.5    **Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of such Entity.

### 12.6    **Service of Documents**

After the Plan Effective Date, any pleading, notice or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| | |
|---|---|
| **Reorganized Debtors** | **Grupo Posadas S.A.B. de C.V.** |
| | Prolongación Paseo de la Reforma No. 1015 Torre A, Piso 9 |
| | Colonia Santa Fe, Alcaldía Cuajimalpa de Morelos |
| | C.P. 05348, Mexico City, Mexico |
| | Attn:    Arturo Martínez del Campo Saucedo |
| | |
| | With a copy to: Counsel to the Debtors |
| | |
| **Counsel to the Debtors** | **Cleary Gottlieb Steen & Hamilton LLP** |
| | One Liberty Plaza |
| | New York, New York 10006 |
| | Attn:    Richard J. Cooper, Esq. |
| | Jane VanLare, Esq. |

| | |
|---|---|
| **Counsel to the Ad Hoc Group** | **Shearman & Sterling LLP** |
| | 599 Lexington Avenue |
| | New York, NY 10022 |
| | Attn:    Mark Shapiro, Esq. |
| | Joel Moss, Esq. |
| | |
| **The Existing Notes Trustee** | **Citibank, N.A.** |
| | 388 Greenwich Street |
| | New York, New York 10013 |
| | Attn:    Danny Lee |

12.7     <u>**Term of Injunctions or Stays**</u>

**Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Plan Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

12.8     <u>**Entire Agreement**</u>

Except as otherwise indicated, and without limiting the effectiveness of the RSA, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

12.9     <u>**Plan Supplement Exhibits**</u>

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at www.nysb.uscourts.gov. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

12.10     <u>**Non-Severability**</u>

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and (c) non-severable and mutually dependent.

*[The remainder of this page is intentionally left blank.]*

Respectfully submitted as of November 30, 2021 by:

GRUPO POSADAS S.A.B. DE C.V.
OPERADORA DEL GOLFO DE MÉXICO, S.A. DE
C.V.

By: _____

Name: Jose Carlos Azcarraga Andrade
Title: CEO

Submitted by:

CLEARY GOTTLIEB STEEN & HAMILTON LLP
/s/ Jane VanLare
Jane VanLare
Richard J. Cooper

One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel for the Debtors
and Debtors-in-Possession*